(Decided June 9th, 1865.)

---

JAMES HOOPER, Jr., and others, vs. WILLIAM LOGAN, Jr., and others.

VENDOR'S LIEN, ASSIGNMENT OF: LIMITATIONS: LACHES.—Articles of agreement were entered into by A and B, for the sale by the former to the latter of an undivided interest in certain real estate. B having made his first payment, as agreed, A afterwards conveyed to C, D and E all his "right, title, claim and interest whatsoever, both at law and in equity" to said property, and at the same time, for "value received," assigned to them all his right, title and interest in and to the said agreement. B having failed to pay the balance of the purchase money as per said agreement, C, D and E, after the lapse of about eight years, filed a bill in equity for the sale of the said property, for the payment of the same. HELD:

1st. That upon the execution of the conveyance and assignment of the articles of agreement as aforesaid, the vendor's lien passed to C, D and E.

2nd. That no plea of limitations having been filed, and no rights or claims of third parties having come in conflict with the claim of C, D and E, and B having had possession of the property since his contract of purchase, without paying the purchase money, C, D and E are entitled to the relief sought by their bill.

3rd. That the lapse of nearly eight years from the date of the conveyance and assignment to the filing of the bill, is no bar to the relief sought, under the circumstances of this case.

APPEAL from the Equity Side of the Circuit Court for Cecil county.

The original bill in this cause, was filed in the Chancery Court on the 3rd of June 1851, by the appellants, assignees

and grantees of the original vendors of certain real estate, against the vendee, for a sale of said real estate for the payment of the balance of the purchase money. The facts of the case are these:

On the 5th day of January 1842, Thomas Burnsides entered into articles of agreement with William Logan, one of the appellees, by which Burnsides covenanted and agreed to sell to Logan, all his right, title, interest and claim to a tract of land called "Whitelock's Discovery," lying in Cecil county, for the sum of five hundred dollars, the same to be paid in the mode set out in the agreement. If Logan paid the purchase money as therein stated, he was to receive "a good warranty deed" for the property. At the time of this agreement, Burnsides held an equitable interest in two-sevenths of the above tract which he had purchased from a certain Thomas W. Whitelock, but owed to Whitelock one hundred dollars of the purchase money, which was unpaid when the bill in this case was filed. Burnsides, at the time of the agreement with Logan, was also seized and possessed of an undivided moiety of the same tract of land which he had purchased from Robert Archer and wife.

On the 14th day of October 1843, Burnsides conveyed to the appellants this undivided moiety, and all his right, title, *claim* and interest whatsoever, both at law and in *equity*, in said tract; and on the same day assigned to them the articles of agreement above mentioned, by endorsement, in the following words: "October 14th, 1843.—For value received, I do hereby transfer, assign and make over, unto James Hooper, John P. Hooper, and James Hooper, Jr., all my right, title and interest in and to the within agreement; as witness my hand and seal this 14th day of October 1843.—Thomas Burnsides, (Seal.) Witness, John C. Groome." Logan having paid only the first instalment of one hundred dollars, the appellants filed a bill of complaint in the High Court of Chancery, which, in 1857, was transmitted to the Circuit Court for Cecil county. In this bill

they allege, that they purchased from Burnsides all his interest in said land. That Logan had paid only the first installment of the purchase money, and the balance remains unpaid, and is due to the complainants. That Whitclock, from whom the two-sevenths was purchased, and to whom one-half of the sum agreed to be paid therefor, was due and owing, is dead, and his administrator and heirs at law, are made parties defendant. By their amended bill the complainants allege, that Logan has become insolvent, and they have no other remedy to enforce the payment of the balance due to them, but by a decree to sell Logan's interest in said land.

That Burnsides never parted with his vendor's lien, except by the deed and assignment of the articles of agreement to the complainants, and they are entitled to enforce this lien. They therefore pray for a sale of Logan's interest to pay the balance due to them, and if there should be more than sufficient therefor, that the claim of Whitclock may be paid out of said balance.

The allegation of Logan's insolvency, though denied by his answer, is established by the proof in the cause.

No payments beyond those stated in the bill, were shown by Logan; his whole defence being, that the complainants had no right to prosecute these proceedings, because there was no express assignment to them of the vendor's lien.

The cause was submitted to the Court below, at the July Term, 1863, when, the Court (PRICE, J.,) dismissed the bill of complaint, and the complainants appealed.

The cause was argued before BOWIE, C. J., and GOLDS-BOROUGH, COCHRAN and WEISEL, J.

*J. T. McCullough*, for the appellants :

In the argument of this case below, it was contended on the part of the complainants, that the assignment from Burnsides was an express assignment of the vendor's lien, not by construction or implication, but by express words.

The language of the assignment transfers to the complainants, "all the right, title and interest" of Burnsides in and to the agreement. One of the rights of Burnsides under and by virtue of the agreement was, to enforce his vendor's lien against the land sold to Logan. This right, though not specifically named, is meant and intended to be, and was in fact transferred by the words of the assignment. The words used are broad enough to cover it.

The cases cited in the opinion of the Court below, differ essentially from this case, and should not be regarded as authority to defeat the manifest intention of Burnsides in assigning and making over to the complainants, his rights and interest in the articles of agreement marked B, as well as the property and rights described in the deed of conveyance. Does the Circuit Court mean to say, that in order to constitute an express assignment of the vendor's lien, the words of the assignment must say expressly, that "the vendor's lien is assigned?"

This case differs from the cases cited, in that it appears on the face of the paper assigned that it is articles of agreement for the sale of land, the interest and quantity being set forth, and the land described by its patent name. The Hoopers received this transfer for value received, paid by them to Burnsides, and were by him at the same time, in virtue of the deed of the same date, clothed with authority whenever the purchase money was paid, to make the title of the undivided moiety to Logan. The cases cited, were in no instance similar to this. In *Schnebly & Lewis vs. Ragan,* 7 *G. & J.,* 120, a promissory note assigned without recourse, was made the basis of the claim for a lien of the purchase money, for which the land was sought to be charged. The note did not mention or make reference to the fact of a sale of land, or that it was given in consideration of a sale, as the agreement in this case does. In that case the Court was of the opinion, that under the particular circumstances of that case, the assignee was not entitled to the benefit of the lien, if such lien existed. The notes hav-

ing been assigned by Lewis to Schnebly, with an express stipulation, that the assignor was in no event to be responsible for the payment of them, the effect and operation of this agreement produced an extinguishment of the lien, because, so far as he was concerned, it amounted to the payment and satisfaction of his claim.

In the case of *Watson vs. Bane, et al.*, 7 *Md. Rep.*, 117, the Court decides that the vendor's lien was waived. It is, however, also decided, that the lien can be assigned by express agreement, but that it will not pass by construction or implication. *Schnebly & Lewis vs. Ragan*, 7 *G. & J.*, 120, and *White vs. Williams*, 1 *Paige Ch. Rep.*, 502, are cited as authorities to sustain this view of the law. The Court below infers from these decisions, that a different rule of law prevails in regard to the construction of assignments of vendors liens from other instruments of writing. This is an erroneous view, as the Court could not have intended to say that, the intention of the parties manifest, from the papers, must not be carried out. If it is plain that the lien was meant to be assigned, the Court should and will carry out and give effect to that intention.

There is no reason why a different rule of law should be made to apply to these cases. The case of *Willis vs. Bryant*, 22 *Md. Rep.*, 373, sustains this view of the cases cited. The assignment of the note in that case, was not in as express terms as in this case. The note showed on its face that it was for purchase money, and this circumstance, taken in connection with the fact that the collection of the note was guaranteed by the assignor, was held to be an assignment of the lien.

*John A. J. Cresswell*, for the appellee :

The question to be determined is, does the vendor's lien pass by the endorsement of the agreement and by the execution of the deed aforesaid, or by either of them? There is no express assignment of the vendor's lien, and the lien cannot pass by implication or construction. *Dixon vs.*

*Dixon,* 1 *Md. Ch. Dec.,* 220. *Hayden vs. Stewart, Jr.,* 4 *Md. Ch. Dec.,* 280. Even a deed or mortgage by the vendor, will not, without express words, transfer the lien. *Watson vs. Bane & others,* 7 *Md. Rep.,* 117.

It is clear that the assignment on the agreement does not make the assignor a surety for the ultimate payment of the money, and that therefore he cannot be brought within the principle of substitution.

There is no liability over against Burnside on this assignment: 1st. Because it (the assignment) is not within the provisions of 1763, ch. 23, secs. 9 and 10, as to the affidavit, &c. 2nd. Because the Hoopers have been guilty of the grossest laches.—The assignment was made to them on October 14th, 1843, and the original bill was not filed until 3rd June 1851, nearly eight years after. The complainants cannot claim any benefit from suretyship, or from Burnside's obligation to indemnify them on the assignment; Burnsides' debt to them has long ago been extinguished. The agreement is nothing more than the evidence of the contract, and includes the promises to pay, which are equal in effect to bonds or notes acknowledged to have been given for purchase money. An assignment of such bonds or notes, will transfer the debt, but not the vendor's lien, (unless expressly mentioned;) so the agreement, when transferred, cannot of itself carry the lien.

But it may be said that, as to half the land, the Hoopers can claim the vendor's lien in virtue of the clause of warranty in the deed. How can this be? "A clause of warranty is in fact and essence a covenant for quiet enjoyment: on which no action lies until the grantee is disturbed in that enjoyment by an eviction or ouster." *Greenleaf's Cruise, title Deed, page* 378, *note.* But a vendor's lien is altogether different. It is a lien for purchase money; and no guaranty can retain the lien, unless it be a guaranty of the ultimate payment of the money due thereon. No other or different guaranty will suffice. The warranty secures peaceable possession, but not the money due on the proper-

ty. under a previous sale; and whether that money be paid or not, the warranty is equally binding. The remedy on the agreement after assignment was *assumpsit*, for the money due, and the remedy on the deed was full and perfect by ejectment. In *Willis vs. Bryant*, 22 *Md. Rep.*, 373, the learned Judge who delivered the opinion, put it upon the ground that the assignee, in consequence of the guaranty, was claiming the fruits of the vendor's lien, for the benefit of the vendor; and therefore, that case does not apply.

2nd. Further,—I contend that under the terms of the agreement made by Burnside with Logan, he, Logan, is entitled to "a good warranty deed" from Burnside.—Besides the provisions of the agreement, the law gives a right to a good title, for the reason, that as the purchaser parts with good money, the vendor shall give an estate with a clear title. (*Duffy vs. Calvert*, 6 *Gill*, 487.) The complainants only claim an equitable interest in two-sevenths of the land, (Whitelock's portion,) and a conveyance of one half from Archer and wife; so that in no event, even if all their allegations were proved, can the complainants give Logan "a good warranty deed?" Burnside never was in condition himself to make a good title, there is no conveyance shown from Whitelock for the two-sevenths purchased from him, and there is no shadow of title adduced for the other three-fourteenths of the land; Burnside never could have complied with his agreement with Logan without having tendered a good and clear title. This he never attempted to do, but before the payments had all matured, he had transferred the agreement, and never offered, nor did his assignees offer to tender to Logan "a good warranty deed," such as he expressly covenanted for, and such as ought to be tendered before the complainants will in any event be entitled to a decree.

*J. T. McCullough*, in reply:

In the cases cited, including *Willis vs. Bryant, Trustee of Wright*, the fact that the assignor guaranteed the interest

assigned, is regarded by the Court as important for the purpose of ascertaining whether the vendor's lien was intended to be assigned with the claim.  In that case the assignor guaranteed its collection to Willis, and that circumstance was regarded by the Court as conclusive as to the intention of the parties that the lien should pass with the note.

Was there a guaranty in this case?  The counsel for the appellee argues that Burnsides could not be held in the assignment of the articles of agreement, "because it (the assignment) is not within the provisions of the Act of 1763, ch. 23, secs. 9 and 10, as to the affidavit," &c.  The answer to this is, that the assignment endorsed on the agreement from Burnsides to the Hoopers, must be regarded as part of the same transaction.

But the appellee's counsel argues that we have lost our remedy in the lien by reason of the laches of the appellants in bringing their suit.  It is not understood that the plea of limitation is set up on behalf of Logan, and yet, unless it is intended to put in such a defence, it is not understood how any question of laches can arise in this case, when the rights or claims of no third parties have come in conflict with the claim of the Hoopers for the unpaid purchase money.  Logan certainly has received no injury or injustice from the Hoopers, through their forbearance or delay in prosecuting their suit.  How a remedy can be lost in such a case, except in consequence of an act of limitation, is more than has been explained by the other side.

The fault is Logan's, if he has not received a deed for the land.  A party has no right to annul a contract when he himself is the cause of the failure of the other party.  *Longworth vs. Taylor*, 1 *McLean, C. C. R.*, 395.  Logan's delay in paying the money for the land, is the only reason he has not received a title for the land.

Equity will not relieve against payment of purchase money on the ground of failure of consideration, after agreement executed, when possession has passed and continued, without any eviction at law under paramount title.  Such

an eviction is an indispensable part of the plaintiff's claim. It would be without precedent, and dangerous in principle, to arrest and bar the recovery of the debt while the purchaser is still in possession under his deed, and there has been no judgment against him at law. *Fonblanque Eq.*, *Vol.* 1, *ch.* 5, *sec.* 8, *note*, and cases there cited.

The mere claim, even by a third party, is not sufficient to authorize an injunction against a proceeding at law or equity to collect unpaid purchase moneys. *Gayle & Wife*, *vs. Fattle*, 14 *Md. Rep.*, 69. In this case there has been no interference with Logan from any quarter. Logan having taken possession of the property, has waived all objection to title. *Hayden vs. Bell*, 1 *Beavan*, 337. *Hall vs. Laver*, 3 *Y. & Col.*, 191. *Fleetwood vs. Green*, 15 *Vez.*, 594. Possession taken, generally amounts to a waiver. *Fluyder vs. Cocker*, 12 *Vez.*, 27. *Clarke vs. Elliott*, 1 *Madox*, 320. *Gibson vs. Clarke*, 1 *Veasey & Beames*, 500. *Ward vs. Jeffrey*, 4 *Price*, 294. *Reeves vs. Gill*, 1 *Beavan*, 375. *Chamberlain vs. Lee*, 10 *Simms*, 444.

Logan cannot now rescind the contract and retain the purchase money as well as the land. He must either give up the land or the purchase money. 1 *McLean*, *C. C. R.*, 395.

GOLDSBOROUGH, J., after stating the case, (*ante pp.* 202 and 203,) delivered the opinion of this Court, as follows:

The only material question for us to decide is, did the vendor's lien pass to the appellants by the assignment of the articles of agreement and the deed aforesaid? In our opinion, these instruments operated to pass the vendor's lien.

The appellants holding the entire title, both by the deed and by the assignment of the articles of agreement, Logan could obtain the title only from them by a bill for a specific performance, alleging therein the payment to them of the balance of the purchase money. This case is clearly distinguishable from those cited by the appellee and by the

Judge of the Circuit Court, in his opinion. In those cases the evidence of indebtedness was alone assigned, and without recourse.

In the case of *Willis vs. Bryan,* lately decided by this Court, the distinction is taken, that the note stated on its face that it was for the purchase money, and where Willis had not only recourse to the assignor by the express guarantee, but was demanding the claim for the benefit of the vendor, the vendee having become an insolvent debtor.

It is contended by the appellee that "the appellants have been guilty of gross *laches,* as the assignment was made to them on the 14th of October 1843, and their original bill was not filed until the 3rd of June 1851, nearly eight years after."

This objection cannot avail any thing in favor of the appellee. No plea of limitations was intervened, and no rights or claims of third parties have come in conflict with the claim of the appellants; and the appellee has had possession of the property since his contract of purchase, without paying the purchase money.

We are of opinion that the appellants are entitled to the relief sought by their bill of complaint, and we will sign a decree reversing the decree of the Circuit Court with costs to the appellants, and remanding the cause for further proceedings, in conformity with our opinion.

*Decree reversed and cause remanded.*