## WILLIAM SCHNEIDER AND WILHELMINA SCHNEIDER, HIS WIFE,

*vs.*

## DORA MARTENS.

*Vendor's lien: mere recitals in deed no waiver.*

A vendor's lien, and the right to enforce it, where the consideration for the deed has not been paid, is not waived or lost by the mere recital in the deed that the consideration has been paid.                                                            p. 553

*Decided January 14th, 1916.*

Appeal from the Circuit Court for Baltimore County. In Equity. (DUNCAN, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*John Holt Richardson,* for the appellants.

*William Curran,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

The bill in this case alleges that the plaintiff, Dora Martens, in July, 1912, entered into an oral contract with the defendants, William Schneider and Wilhelmina Schneider, his wife, whereby she agreed to sell and convey to the defendants the leasehold property known as No. 3922 Eastern ave-

nue, Highlandtown, Baltimore County, Maryland, of which
she was the owner, and the defendants agreed to pay her
therefor the sum of $1,500.00; that in pursuance of the con-
tract the plaintiff, on the 8th of August, 1912, executed and
delivered to the defendants a deed for the property which
was duly recorded among the Land Records of Baltimore
County; that while the deed recites that the consideration
was paid, no consideration was in fact paid, and that the
recital was inserted in the deed by the attorney who prepared
it with the understanding of the attorney and the plaintiff
and defendants that the defendants would pay the considera-
tion of $1,500.00 upon the recording of the deed, but that the
defendants refused to pay any part of the consideration
mentioned when the deed was recorded, and continue to re-
fuse to pay the same or any part thereof. The bill then prays
for a decree declaring the unpaid purchase money to be a
vendor's lien upon the property; for a sale of the property
for the purpose of paying the lien, and for general relief.

The defendants answered the bill and allege that in Au-
gust, 1911, the plaintiff "habitually" importuned them to
move into and take possession of the property referred to,
but that they, not caring to break up their own home, refused
to accede to such importunities; that they finally yielded to
the request of the plaintiff, and in the month of July, 1911,
the plaintiff agreed with them that if they would take the
property they could repair and improve the same so as to
make it a thoroughly modern dwelling, and pay the plaintiff
the difference between the cost of the improvements and the
sum of $1,500.00; that pursuant to said agreement, they,
the defendants, expended in improvements on the property
the sum of $1,035.85, and also paid the plaintiff the sum of
$100.00; that the deed for the property, which was not exe-
cuted until August, 1912, was prepared at the instance of
the plaintiff and by her attorney; that they have always been
ready and willing to pay the amount they owe the plaintiff,
and that they are willing to reconvey the property to the

plaintiff upon payment by her of the amount expended by them on the property and other amounts due them; that they are also willing to have the property sold, but insist that they be reimbursed for all money expended by them or that may be due them.

The appeal is from a decree of the lower Court declaring the unpaid purchase money to the amount of $1,500.00 to be a vendor's lien upon the property mentioned, and ordering the property to be sold to satisfy the lien unless the amount thereof was paid within thirty days from the date of the decree.

The plaintiff testified that the defendants are her daughter and her son-in-law. She purchased the property No. 3922 Eastern avenue, in July, 1911, and paid $2,000.00 for it. It was a two-story brick building, with a two-story frame back building, and was in good condition at the time she purchased it. In the summer of 1911 she had a conversation with her daughter, Mrs. Schneider, which resulted in an agreement on her part to sell the property to her daughter for $1,500.00. Some time before Christmas, 1911, Mrs. Schneider asked the plaintiff if she could have possession of the property, saying that she would pay for it as soon as she sold her property on Foster avenue, and that she was accordingly allowed to take possession of it in 1911. The deed to the defendants was executed in August, 1912, and recorded on the 16th of the same month, and at the time of the execution of the deed Mrs. Schneider promised to pay the $1,500.00 as soon as the deed was recorded. Plaintiff asked her a number of times to pay for the property, and she always replied that she had not gotten the money yet, and that finally she told the plaintiff she would not pay her a cent. The improvements were made after Mrs. Schneider took possession of the property. The plaintiff never authorized the improvements, and Mrs. Schneider never made any claim to the plaintiff for any allowance for repairs or improvements, and the plaintiff never heard of such a claim

until after this suit was brought. The plaintiff has never received any part of the purchase money. On one occasion, long after the improvements were made, Mrs. Schneider, who owed the plaintiff's son Fred for the milk business she had purchased from him, came to the plaintiff's house with $1,000.00 in bank notes and asked her and her son which one she should pay the $1,000.00 to, and that her son replied: "Give it to me first; I need it bad, and mamma waits a little." On cross-examination the plaintiff stated that the reason she sold Mrs. Schneider for $1,500.00 a property for which she had just paid $2,000.00, was that she was her daughter.

Catherine Whaley, who stated that she used to work for Mrs. Schneider and frequently visited her, testified that during the summer of 1913 she asked Mrs. Schneider to lend her some money, and that she replied that she could not do it because she still owed her mother the $1,500.00 for the house, and that Mrs. Schneider never said anything to her about her mother agreeing to pay for the improvements on the property.

Fred Martens, a brother of Mrs. Schneider, testified that when she took possession of the property in 1911 it was in good condition. He sold Mr. and Mrs. Schneider his milk business, and on the night he made the sale to them, in 1912, she said to him: "Fred, you know I owe mamma $1,500.00 for the house No. 3922 Eastern avenue, and now I am buying the business I have not got enough money to pay you just now; will you wait until we make a little money, as you know the Foster avenue house isn't sold?" And he told her he "would wait a little while." He further testified that the defendant made some money, and that one morning his sister came to his mother's house, where he lived, and said to him and his mother: "Who shall I pay first?" and that he replied she should pay him first, as his mother could wait a while. In February, 1913, his sister came over to his mother's house with $1,000.00 and asked who she should give it to,

and that he told her to give it to him. He never heard of any claim for an allowance for the improvements made on the property until after this suit was brought. After Mrs. Schneider "straightened up with" him for the milk business, in 1914, they "had a fuss" and he told her she ought to pay her mother for the house, and she then, for the first time, said she didn't owe her a cent and stated as the reason for not paying her mother that she had worked for her.

John W. Prinz, Esq., the attorney who prepared the deed for the property, testified that in July, 1912, Mr. Schneider came to him and told him that Mrs. Martens, the plaintiff, desired to see him in reference to the transfer of the property, No. 3922 Eastern avenue. He did not know the plaintiff but knew Mr. Schneider intimately and had represented him in legal matters. He went to the plaintiff's house with Mr. Schneider, who introduced him to the plaintiff and then left him with the plaintiff and Mrs. Schneider. Mrs. Martens told him she was selling the house to her daughter, Mrs. Schneider, for $1,500.00, and asked him to examine the title and draw the deed, and he told her he would fix the matter up in about two weeks. In the meantime he met Mr. Schneider and asked him who was going to pay the expenses of the transfer, and he said Mrs. Martens was advancing the money and that Mrs. Schneider would settle for everything after the deed was recorded. He heard no more of the transaction until the month of July, 1914, when the plaintiff called at his house, and after his conversation with her he communicated with Mr. Schneider, and when witness saw him he told him that he had been advised by the plaintiff that they had not paid the $1,500.00 they agreed to pay for the house. Mr. Schneider said that he did not see where he owed anything because the transaction had been arranged between the plaintiff and his wife; that he knew nothing of the terms of the agreement, and that if Mrs. Martens made any attempt to collect the money he was going "to swear a warrant out for her," and asked the witness to communicate that statement to the plaintiff. With the consent of Mr.

Schneider he went to see Mrs. Schneider in August, 1914, and told her that Mrs. Martens said she had failed to pay the $1,500.00. Mrs. Schneider replied that she did not see where she owed the plaintiff a cent; that she had done a lot of work for her for a number of years, and that she didn't think her mother ought to expect anything from her, that "some of the other children had been doing nothing, and had been getting it all," while she had been doing lots for her mother for years and had gotten nothing. He then said to her, "But didn't you promise your mother the $1,500.00 for the property?" and she replied, "Yes, but I don't see where I owe her one cent." He told her that her mother would probably institute proceedings, and, as he knew all the parties so well, he would be very glad to do anything he could to "forestall" such action, and that Mr. and Mrs. Schneider then said that if legal proceedings were instituted they "would have the old lady locked up." The witness further stated that he discussed the controversy between the plaintiff and the defendants very fully with the defendants, and that they "never mentioned a word" about any claim for improvements made by them on the property, and "never even intimated any such thing," although he had probably seen the defendants eight or nine times.

The only evidence offered by the defendants is the testimony of Mr. Schneider, who stated that he did not know anything about the terms upon which the property was sold, and that he had nothing to do with the improvements, and the testimony of Mrs. Schneider, which, to say the least, is far from satisfactory, and would hardly be sufficient to establish, with certainty, her own theory of the case as presented by the answer, even if there was no other evidence in the case. It would serve no purpose to make further reference to this evidence, except to say that it is not sufficient to overcome the evidence produced by the plaintiff, and that it convinces the Court that the defense relied upon was an afterthought on the part of the defendants.

The right to a vendor's lien and to enforce the lien where the consideration for a deed has not been paid, notwithstanding a recital in the deed that it has been paid, is fully recognized in this State. *Carr* v. *Hobbs,* 11 Md. 285; *Bratt* v. *Bratt,* 21 Md. 578; *Hooper* v. *Logan,* 23 Md. 201; *Thompson* v. *Corrie,* 57 Md. 197; *Hooper* v. *Central Trust Co.,* 81 Md. 559. In *Hooper* v. *Central Trust Co., Supra,* the Court said: "Now the vendor's lien exists for unpaid purchase money, even though a deed has been executed and possession of the property has been delivered. *Schwartz, Guardian,* v. *Stein,* 29 Md. 112. Perhaps it would be more technically accurate to call the lien a grantor's lien after the deed has been delivered. 3 *Pom. Eq.,* Sec. 1249, note. The vendor's or grantor's lien is not waived by a recital in the deed that the consideration has been paid. *Thompson* v. *Corrie,* 57 Md. 200."

The rule excluding a parol contract varying a deed (*Bladen* v. *Wells,* 30 Md. 577) is not relied upon and is not applicable to this case, for here there are no exceptions to the evidence, and the defendants admit that the consideration for which the deed was given was $1,500.00, but set up as a defense to the bill an alleged agreement with the plaintiff by which they were to be allowed for the improvements made by them on the property, and state in their answer that they are willing to pay the plaintiff the balance of the purchase money due her, or to reconvey the property to her upon payment of the amount expended by them for improvements, and that they are willing to have the property sold providing they are reimbursed for the improvements. The evidence fails to establish the alleged agreement in regard to the improvements, and satisfies the Court that no part of the *admitted* consideration for the transfer of the property to the defendants has been paid by them, and we will therefore affirm the decree of the Court below.

*Decree affirmed, with costs to the appellee.*