1817.

Howard
vs
Rogers

2. That the bearer may sue on it as on an inland bill of exchange, and is entitled to recover in this form of action.

He cited *Chitty on Bills*, 339, 340. *Boehme vs. Sterling*, 7 *T. R.* 423. *Cruger vs. Armstrong*, 3 *Johns. Cas.* 5. *Grant vs. Vaughan*, 3 *Burr.* 1516. *Hinton's case*, 1 *Shower's Rep.* 235.

**JUDGMENT AFFIRMED.**

---

June

## HOWARD vs. ROGERS.

J E H by deed of bargain and sale, granted and conveyed to N R a lot or parcel of grou d. part of *Lunn's Lot*, and located it as "beginning for the same at the s W corner of E and G streets, and running thence S, binding on E street, 150 feet to C alley, thence W binding on C alley continued 300 feet, to P street, thence N binding on P street 150 feet to G street continued, *which street bounds on the S, the square intended for public uses*, thence E binding on said street from the said square to the beginning." On a bill filed in chancery by N R against J E H, for an injunction to restrain him from applying to private uses, the square intended for public uses, but that he should be obliged to keep it open for public purposes—*Held*, that it was the plain intention of the parties, to be collected from the words of the deed, that the lot therein described should pass, and all J H's right and interest therein, and nothing else. In the construction of a deed the intention of the parties is to prevail if not incompatible with some rule or maxim of law The intention is to be collected from the words of the deed as expressive of and defining the meaning of the parties. The deed is to be construed most favourably for the grantee, if there is any doubt about the meaning of the parties.

APPEAL from a decree of the Court of Chancery. The appellant being the proprietor of all the lands around the public square in the city of *Baltimore*, as located on the several plots exhibited in the cause, and also of the grounds around the half square to the south of the public square, had, by deeds to *Goldsborough* and *Paca*, appropriated the square to public uses, and had declared and evinced the same in other contracts and acts, and particularly in plots which he had caused to be made of his property, and which plots had been copied into a map of the city, and its vicinity, published in the city in the year 1792. He afterwards, on the 25th of August 1796, made a conveyance to the appellee of a lot of ground in the following words: "Beginning for the same at the south west corner of *Eutaw* and *German streets*, and running thence south binding on *Eutaw street* one hundred and fifty feet to *Cider Alley*, thence west binding on *Cider Alley* continued three hundred feet to a street known by the name of *Paca-street*, thence north binding on *Paca-street* one hundred and fifty feet to *German-street* continued, which street bounds on the south the square intended for public uses, thence east binding on said street, and fronting the said square, to the beginning." There had been a deed prepared before and executed by the appellant, and delivered to the appellee, in which the expressions relative to the public square were omitted; and the appellee returned it to the appellant, objecting to it on that account, and requiring the words to be inserted for the purpose of giving his lot the privilege of fronting the square, and in consequence thereof the appellant caused a new deed to be drawn, containing the expressions above mentioned. The bill claimed that the appellant should be enjoined from applying that square to private uses, but should be obliged to keep it open for public purposes.

KILTY, Chancellor, (September term 1815.) The bill was filed to obtain an injunction against the defendant, restraining him from leasing, selling, improving, or building upon, a certain piece of ground alleged therein to

*Parol evidence is not to be admitted, nor extraneous circumstances introduced in the exposition of deeds, except in the single instance of a latent ambiguity.*

1817.

Howard
vs
Rogers

have been intended as a public square, or from appropriating it to any other use. And a decree was prayed to compel the defendant to remove from the said square all buildings and erections thereon made, and to appropriate the square to public uses according to his contract. The injunction was granted. Since which the defendant has put in his answer. Testimony has been obtained by commission and agreement, and the case was set down for final hearing. It was argued at the present term by counsel on each side, and the proceedings have since been fully considered. Although it may possibly be a case of some hardship or loss to the defendant, the chancellor is of opinion, on the whole, that the complainant is entitled to relief, chiefly on the expressions contained in the deed of the 25th of August 1796, which are not contravened by any other agreement, supposing such to be sufficient against the deed. The first agreement or conversation respecting the lot bounding the square on the north No. 992, is not of much importance, and is not considered as having been obligatory on the defendant, or to have absolutely induced him to make the sale in question; though it may serve to show the wishes of the complainant, and the disposition of the defendant to comply with them, and the apparent intention as to the square. The circumstances attending the contract for the lots on *German-street*, and the conversation between the parties, would be more material if this was a bill to compel a specific performance of the parol agreement in part executed. But the defendant has by his deed said that *German-street* then bounded on the south the square intended for public uses, and described the last line as fronting the said square. These expressions imply an absolute intention, and the defendant cannot set up by his answer, or prove a different intention or a conditional, if not made known to the complainant and assented to. And he has not produced, in order to rebut the equity prayed, any proof that the contract contained in the deed has been waived or valued by the parties. The strongest ground for supposing it waived by the complainant would be the length of time; but that though of some weight is not judged sufficient for the purpose, even connected with his knowledge of the lease to *Roberts*, because no day was fixed as to the opening or final clearing of the square, and the terms of the lease were not incompatible with its future establishment. And the delay may be accounted for from other circumstances. It is to be observed also that although there has been a considerable degree of remissness and a want of explicitness in both parties, the complainant applied by letter of October 1808, to the defendant respecting the square, the answer to which neither denied nor admitted expressly his right. The deed was not only from its nature the solemn act of the grantor, but was made after time for reflection, and as the answer says not without hesitation, which excludes the idea of surprise as stated by the defendant's counsel, and both parties ᵐᵃˡˡ ᵃᵇˡᵉ ᵗᵒ ᶜᵒⁿᵗʳᵃᶜᵗ  Iᵗ ʳᵉᵐᵃⁱⁿˢ ᵗʰᵉⁿ ᵗᵒ ˢᵃʸˢ

sider the main ground of defence, to wit, that it is not such a contract as that a court of equity ought to decree a specific performance of it. This objection does not appear to be supported. It was a fair, just and reasonable object with the complainant to have his lots fronting an open square, and it rested with the defendant to repel that object in his contract or (if there had been any misconception) in his deed. The agreement was sufficiently certain as to the location of the square from the plot exhibited (which plot is also material on the main question) and it was mutual and on a sufficient consideration from the price paid for the lots. And the establishment of such a square is not inconsistent with the general policy of a well regulated society. The agreement is also free from fraud, circumvention or surprise on either side—The parties contending only for their respective rights Neither will the performance affect the rights of other persons, the defendant having reserved to himself the power of keeping open the square. The consequence of a decree for the complainant will be that the defendant may *lose* the advantage which a different appropriation of the ground might give him, which is a circumstance that cannot weigh against his contract. On the other hand, by a dismissal of the bill the complainant would lose the object of his purchase as claimed by him, and apparent from the deed which he required and obtained. And his lots would be shut in by other buildings instead of fronting an open square which he had chosen. And notwithstanding the opinions expressed by the witnesses, this court ought not to refuse a suitor his just rights, because other persons think the enjoyment of them would be injurious to him, inasmuch as men are generally the best judges of what will benefit themselves. It is not recollected that any thing was said in the argument respecting the temporary buildings on a part of the square, which are prayed to be removed. But such removal would of course be necessary in opening the square, and would probably take place to make way for other improvements, supposing the decision to be in favour of the defendant. *Decreed,* that the injunction be and the same is hereby made and rendered perpetual. *Decreed* also, that the defendant, his agents, servants, and all others employed by him, be and they are hereby prohibited and perpetually enjoined from using or appropriating the piece or parcel of ground mentioned and described in the complainant's bill as being bounded, &c. from any other use or purpose than as a public square; and that they do perpetually and for ever hereafter surcease. desist, and refrain from *selling,* leasing, improving, building upon, or in any other manner appropriating or using the said piece or parcel of ground so as aforesaid described, for any other use or purpose than a public one. And that the defendant, within twelve months from the date hereof, do remove and take from the said public square, all houses, buildings and erections, of every description, now erected, standing, or being on the said pub-

1817.

Howard
vs
Rogers

lic square, so as aforesaid described, or any part thereof. From which decree the defendant appealed to this court.

The cause was argued before CHASE, Ch. J. and BUCHANAN, EARLE, MARTIN, and DORSEY, J.

*Harper* and *Taney*, for the Appellant. 1. Are the words in the deed from the appellant to the appellee of the 25th of August 1796, a covenant on the part of the grantor, that the said square shall be applied exclusively to public uses?

2. If such be the construction, is it such a contract as equity will compel him specifically to perform?

On the *first* point they referred to *Sugd.* 87, 88, 90, 91, 102. 1 *Fonbl.* 145, *(note b,)* 149, *(note c.)* *Shep. T.* 253, *(note* 1.) 1 *Pow. on Cont.* 385.

On the *second* point they referred to 2 *Pow. on Cont.* 221, 222. 1 *Fonbl.* 147. *(note,)* 149, *(note c,)* 356, 358, (and *note.*) *Sugd.* 147, 148.

*Martin, Winder* and *Winchester,* for the Appellee, referred to *Shep. T.* 50. 1 *Pow. on Cont.* 385. *Buchanan's Lessee vs. Steuart,* 3 *Harr. & Johns.* 329.

CHASE, Ch. J. delivered the opinion of the court. The question to be decided in this case lies within a narrow compass, and must depend on the true construction of the deed from *Howard* to *Rogers,* and that construction is to be determined by resorting to some plain well known established rules and principles of law. The intention of the parties is to prevail, if not incompatible with some rule or maxim of law; this is considered as the polar star in expounding deeds—The intention to be collected from the words of the deed as expressive of and defining the meaning of the parties—The deed to be construed most favourably for the grantee, if there is any doubt about the meaning of the parties. Parol evidence is not to be admitted, nor extraneous circumstances introduced in the exposition of deeds, except in the single instance of a latent ambiguity. These principles will guide us to a right decision in this case.

Col. *Rogers* purchased a lot of ground of Col. *Howard,* and by the deed under consideration, *Howard* conveyed the lot to *Rogers.* What are the words of the deed which relate to this question?

Col. *Howard* grants a lot or parcel of ground, part of *Lunn's Lot,* to Col *Rogers,* and locates it in the following manner, to wit: "Beginning for the same at the south west corner of *Eutaw* and *German streets,* and running thence South, binding on *Eutaw-street,* one hundred and fifty feet to *Cider Alley,* thence West, binding on *Cider Alley* continued, three hundred feet, to a street known by the name of *Paca street,* thence North, binding on *Paca street,* one hundred and fifty feet, to *German-street* continued, which street bounds on the south the square intended for public

uses, thence East binding on said street, and fronting the said square to the beginning."

There is not any thing mentioned in the granting part of the deed but a lot of ground part of *Lunn's Lot.* These words "Beginning," &c. are a description of the lot, and designate the location of it, and shew in a plain manner where it lies. The words "*which street bounds on the South the square intended for public uses,*" were inserted to render the description more certain, and identify more plainly the said lot; these words convey no right, interest or privilege in the square. The words "*binding on the said street, and fronting the said square to the beginning,*" are also words of description, and are susceptible of the same answer.

The deed in this case is free from doubt. Indeed there is not the semblance of ambiguity in it; and parol evidence cannot be received to explain the deed, or to shew that any thing passed but what is mentioned in the deed. It was the plain intention of the parties, to be collected from the words of the deed, that the lot therein described should pass, and all Col. *Howard's* right and interest therein, and nothing else.

The court are of opinion, that the decree of the court of chancery be reversed, with costs to the appellant, in the court of chancery, and in this court.

DECREE REVERSED.