(Decided April 1st, 1897).

---

THE SOUTH BALTIMORE HARBOR AND IMPROVEMENT COMPANY OF ANNE ARUNDEL COUNTY vs. HENRY SMITH ET AL.

*Dedication—Map of Public Square in Projected Town—Joint Owners—Recording of Agreement Relating to Land—Constructive Notice.*

Where the owner of land makes an agreement by which a joint interest in the same is given to another party, and this agreement is duly recorded among the Land Records, he can do no acts afterwards by which a part of such land becomes dedicated to the public without the consent of the other party. And the subsequent recording by vendor of a plat of the land upon which a part thereof is designated as a public square does not constitute a dedication of the same.

A corporation which owned a large tract of land, the site of a projected village, caused a plat of the same to be made showing lots and streets, and also a public square of several acres. Before this plat was recorded and before any lots were sold, the corporation made an agreement with another company by which the latter acquired the right to purchase a certain number of lots on certain terms, and also a right to fence in the proposed public square and have exclusive use of the same until a certain date, after which time it was agreed that the square should be vested jointly in the two companies for such purposes as they should agree upon. This agreement was recorded among the Land Records and the map was subseqnently recorded. The defendant company became the successor in title to these two companies and claimed to own the land embraced within

the proposed square.   Plaintiffs, who were owners of lots in the town, purchased after the agreement claimed that the square had been dedicated, and asked for an injunction restraining the defendant from exercising acts of ownership therein.   *Held,*

1st. That under the Act of 1835, ch. 205, the agreement between the two companies was a " contract relating to land " and as such was entitled to be recorded.

2nd. That the record of said agreement was constructive notice to all the world that the square laid down on the plat subsequently filed was not a public square, but the private property of the two corporations, and no dedication thereof could be established by the act of the vendor alone.

Appeal from a *pro forma* decree of the Circuit Court for Anne Arundel County.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, ROBERTS and RUSSUM, JJ.

*Isidor Rayner* and *John F. Williams,* for the appellant.

*Daniel R. Magruder* and *Elihu S. Riley,* for the appellees.

FOWLER, J., delivered the opinion of the Court.

The Patapsco Company was incorporated by the Legislature of Maryland in the year 1853.   It was authorized by its charter to buy, sell and improve land in Anne Arundel County.   In the exercise of the power thus conferred it became the owner and entered into the possession of a large tract of land in said county, opposite the city of Baltimore. Part of this land was laid out in town lots and a plat thereof was made showing thereon certain streets and avenues and a public square, which square contained about fifteen acres, which the plaintiffs claim was dedicated to public use, and especially for the use of themselves as owners of lots and their successors in title.   The name of the proposed town, as appears by the map, was to be " Brooklyn."   It was also spoken of as the " City of Brooklyn ;" but except in name, it never became either a town or city, and the project of the Patapsco Company appears to have utterly

failed.   The map in question, however, was recorded among the Land Records of Anne Arundel County by the secretary of the Patapsco Company some time after the recording of the agreement presently to be mentioned.   The bill alleges that in the deeds from time to time executed by said company reference is made to said map, and the lots described as thereon laid out.   It is also alleged that among the inducements held out by the Patapsco Company to purchasers of lots was the fact that they would be entitled to the use of the streets and public square as laid out on said map, and their contention is that by the acts of the said company in so laying out and locating said town and the said lots, streets and public square, and by making and recording the said map, and the sale of said lots with reference to it in the deeds therefor, together with the "inducements" before mentioned, such streets and square "became dedicated to the perpetual use and enjoyment of the purchasers and successive owners and occupants of said lots." It is also alleged in the bill that the defendant, "The South Baltimore Harbor and Improvement Company of Anne Arundel County," which for convenience we will call "the defendant company," by virtue of a pretended purchase from the Patapsco Company claims to be the owner of the land constituting the public square, and that said defendant company had taken possession of said square and was about to cut down the trees thereon and to cultivate the land embraced therein.   They (the plaintiffs) asked for and obtained from the Circuit Court of Anne Arundel County an order for a preliminary injunction restraining the defendant company from exercising any acts of ownership over the said square.   This order is dated the 28th January, 1886.   On the 24th March, 1887, the joint and several answer of the defendant company and other defendants was filed.   Nothing further appears to have been done by either party, with the exception of the partial examination of one witness on the part of the plaintiff, until the 23rd January, 1896, when the plaintiffs filed a petition for leave to take additional testi-

mony.   The testimony was filed 21st July last—and on the 16th November following a *pro forma* decree was passed making the injunction perpetual.   From this decree all the defendants have appealed.

It will be seen from the foregoing statement that there is but one question involved—whether the land which is designated as a public square has been dedicated to public use. We have already set forth with sufficient fullness·the facts on which the plaintiffs rely in their bill to establish a dedication, and we will now state those on which the defendants rely to show there never was any such dedication of the square either by the Patapsco Company, its predecessor in title or by itself.

The first and most important fact relied on by the defendants is that on the 14th July, 1858, the Patapsco Company, which it is conceded then owned the square in question, unless theretofore dedicated, made a contract with a corporation known as "The Brooklyn Company," by which the former agreed to lay out on a part of its land a town to be called "Brooklyn," and prepare a plat thereof from a lithographed plat then existing, divided into lots of certain sizes and to grant to the Brooklyn Company the privilege of purchasing a certain number of·said lots on terms therein set forth.   That agreement contained the following provision : "The Brooklyn Company may fence in the public square to be located on the proposed plat, as now shown on the lithographed plat, and may plant and embellish the same with walks, trees, &c., and may erect thereon any temporary improvements at its own expense, and such improvements to belong to the Brooklyn Company, and may be removed at any time before July 1st, 1866, at which date all exclusive rights of the Brooklyn Company as to said square shall cease, and the square be vested jointly in the contracting parties hereto for such uses and purposes as they shall agree."   This agreement was duly acknowledged and recorded on the 6th October, 1858, among the Land Records of Anne Arundel County.   As we have already seen, the

map or plat relied on by the plaintiffs was filed for record in the same county by the secretary of the Patapsco Company sometime subsequent to the recording of the agreement. By conveyances subsequent to the recording of the agreement the defendant company became the successor in title to the two corporations therein named, and its contention is that it has now vested in it all the title and estate of both of said companies, and is therefore the absolute owner in fee of the ground designated as a square.

We do not understand that there is any question made as to the fact of these conveyances, although they are not before us in this record, but the difference arises as to their legal effect—the plaintiffs contending that they could not operate to recall or destroy a dedication made before they were executed, and the defendants claiming that neither before nor after the execution of the agreement between it and the Brooklyn Company was any dedication made, and bases its claim of absolute ownership on the true construction of that agreement, as well as on the subsequent conveyances above mentioned.

The law involved in this case is well-settled. It has been always held in this State and elsewhere that whether a dedication to the public has been made depends in every case upon the intention of the parties, and this, whether dedication is claimed by acts *in pais*, by solemn conveyances of record, or by judicial proceedings. And it is also as well settled that such intention to dedicate must be established by clear, satisfactory and unequivocal testimony. Thus it has been held that, although a presumption arises that a dedication was intended by reason of the conveyance of land binding on the sides of a street, yet this presumption will be rebutted by the execution of a subsequent deed by the same grantor to the same grantee of the bed of the street. And, therefore, when the street was actually opened by the city of Baltimore, it was compelled to pay substantial damages. *Hall* v. *M. & C. C. of Balt.*, 56 Md. 187. And so in *Pitts' case*, 73 Md. 326, it is said that the inten-

tion to dedicate by a sale and conveyance of lots binding upon a street " may be rebutted in many ways, as by other express covenants or agreements between the parties, or by the fact that the call for the street was made merely for the purpose of convenient description of boundaries  *  *  * or by any other circumstances showing the absence of an intention to dedicate to public use." The rule that the strongest, clearest and most convincing proof of intention will be required to establish a dedication has been announced again and again by this Court.

It is claimed by the plaintiffs that the alleged dedication was effected by the laying of the square on the map, by the sale of lots in accordance with and with reference to said map and by representations made by the agents of the Patapsco Company that the streets and square, as they appeared on the map, should be enjoyed by the purchasers of lots. Now, it may be conceded that if there were any owners of lots who purchased under such circumstances and without notice of the contents of the agreement between the Patapsco and Brooklyn Companies, they would have a standing in a Court of Equity. But what is the evidence? We have already seen that on the 6th of October, 1858, the agreement just mentioned, under which the defendant company claims it was impossible there could be any presumption of an intention to dedicate, was placed upon record. It seems to us that, in the face of the language of that agreement, the strength of the defendants' position cannot be denied. From its date, 14th July, 1858, the Brooklyn Company was to have exclusive control of the square, with the privilege of planting trees, making walks and. erecting at its own expense any temporary improvements, which could be removed before July 1st, 1866, when the ground called " The Square " vested jointly in the two companies, for such uses as they should mutually agree. If this be a valid contract, as it undoubtedly is, then from the time it was placed upon record it was constructive notice to all the world that, so far from the square

being a public square, it was the private property of the two contracting corporations—unless as claimed by the plaintiffs this agreement was not such a paper as under the then existing registry laws of this State was authorized to be registered or recorded. It has been held that the doctrine of constructive notice has no application to deeds or papers which may be in fact recorded, though not required or authorized so to be ; *Johns* v. *Reardon*, 3 Md. Ch. 57; *Glenn* v. *Davis*, 35 Md. 215; and, therefore, unless this agreement is such a deed or contract as was authorized by the Act of 1835, ch. 205, to be registered, knowledge of its contents cannot be imputed to the plaintiffs or their predecessors in title in the absence of proof of actual notice. By sec. 4 of the Act just mentioned, it is provided that in all cases of acknowledgements of deeds, or conveyances, or writings obligatory, or contracts of, or relating to lands, &c., or any right, title, interest, estate, or use therein, the Justice taking such acknowledgment shall, &c. And sec. 3 provides that the following may be recorded if duly executed and acknowledged as deeds, namely, " all writings obligatory, or contracts for conveyances of lands, or of any interest, or estate of, in or relating to lands," &c. Upon its face the agreement in question is " a writing obligatory relating to land," by which the Patapsco Company agrees to sell and the Brooklyn Company agrees to purchase, upon certain conditions, a large number of lots, and the former agrees to " execute deeds " for the same upon certain conditions therein mentioned. It was contended on the part of the plaintiffs that only deeds of conveyance and what are technically called bonds of conveyance are contemplated by this Act to be recorded. But in so far as concerns the Act we are now considering, this would, we think, independent of authority, be too narrow a construction. But in the case of the *U. S. Ins. Co.* v. *Shriver*, 3 Md. Ch. 384, the Chancellor said : There is nothing, as I conceive, in the registry acts, which restricts them to conveyances of the legal title or estates, and in the words of

that Eminent Judge, who delivered in opinion of the Court of Appeals in *Hays* v. *Richardson*, 1 G. & J. 384, "Their design was that all *rights, incumbrances or conveyances, touching or in anywise concerning land*, should appear on the public records." And we believe the general practice as to registration of papers has been in accordance with this view before and since the adoption of the Code. Unless, therefore, the plaintiffs have by the evidence offered by them, established a dedication either by acts *in pais* or by deed, or both, before the 6th October, 1858, when this agreement was recorded their attempt to do so must fail, for after the recording of the agreement they and all the world were bound to take notice that the square was under the control of the Brooklyn Company until 1866, and thereafter it became the joint property of the two contracting corporations. After the recording of this paper no act or deed of the Patapsco Company alone could work a dedication, and there is no satisfactory evidence that either company did anything to indicate an intention to dedicate the square to public use. What is the evidence relied on to prove a dedication before 6th October, 1858? In the first place the plaintiff, Henry Smith, holds his lot by deed from R. W. Templeman and wife, dated 31st December, 1874, and Templeman's deed from the Patapsco Company is dated 11 July, 1872. The deed from the Patapsco Company to Donelson is dated 9th September, 1872, that to Roche in 1859, and that to McPherson in 1862. Thus all of the deeds which are produced to show the lots were conveyed with reference to the streets and square as laid out on said map, are subsequent to the time required, and not one of them is the joint deed of the two parties who alone were the absolute owners of the ground claimed to be dedicated.

Some effort was made to prove sales of lots within the time—that is before October, 1858, and the direct question was asked Mr. Templeman, the most intelligent and best informed witness who was examined, if he had any memo-

randa in his possession to show whether any sales had been made before that time, and he answered that he had none. He was also asked if he could state the dates when the lots were agreed to be sold to other parties, but he was able only to say that he had *located* lots in 1857 and 1858, but whether the lots so located were sold and conveyed in such a way as to show a dedication does not appear. The witness Stall and his wife also testify from recollection that they bought a lot from the Patapsco Company prior to 1858, and promised to produce the deed; but they have failed to do so. Nor is the evidence satisfactory in regard to the alleged inducements offered to purchasers. Mr. Stall in answer to the question whether he bought his lot on certain representations alleged to have been made as to the square, said that when he had money he bought the lots, and that the inducements had nothing to do with his action. He never saw a map with the square on it. Mr. Templeman also says that he presumes the square was held out as an inducement to buy lots, but he does not recollect it.

The so-called "Prospectus and Diagram" which was issued by Mr. Templeman was also relied on as evidence to show a dedication in 1878. It stated that a public square of fifteen acres had been reserved for settlers. It is without date, and it does not appear when it was issued, but it was stated in argument that it was first circulated in 1878 or 1880 after the bridge was made free. But, as we have already said, no act of the Patapsco Company alone could, after the recording of the agreement, result in a dedication. The testimony shows that this circular was an effort of Mr. Templeman, who was then and still is the secretary of the Patapsco Company. It is true he says that both companies were cognizant of his action to the best of his knowledge. But there is no evidence that either company authorized him to print or distribute the paper in question. Under these circumstances this evidence cannot be accepted as satisfactory and conclusive proof. Who and where are the settlers—settlers after 1878—who are claiming to have

made good the implied promise of this defendant to dedicate and maintain a public square in the city of Brooklyn? No lots appear to have been sold and conveyed after issuing of the circular, and before the time when the interests of the other two companies merged in the defendant company, who claims to be a *bona fide* purchaser for value.

There is some other testimony as to dedication and as to inducements, but none of it is so cogent, persuasive and full as to destroy all reasonable doubt of the intentions of the owners to dedicate.

While some of the acts of the parties would tend to show an intention to dedicate, yet in view of all the circumstances of the case, and especially in view of the recorded agreement, we think the parties never intended to relinquish their claim to the land in dispute, and at the most they intended only a conditional dedication, an instance of which it was said in *White* v. *Flannigain*, 1 Md. 543, will be found in *Howard* v. *Rogers*, 4 H. & J. 278, where the ground was given for a public square upon the implied condition that the seat of government would be moved from Annapolis to Baltimore — and the condition not having been fulfilled it was held there was no dedication. Doubtless if the city or town of Brooklyn had ever existed anywhere except on the map, the dedication here claimed would have become complete, and the owners of the ground would have been glad to waive all their claims in favor of the public. Dedication by user was disclaimed at the hearing, although some reliance is based upon this view in appellee's brief. The evidence, however, in regard to user is very unsatisfactory, and we think the position was properly abandoned.

It follows that the decree appealed from must be reversed.

*Decree reversed and bill dismissed.*

(Decided April 1st, 1897).