THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LOUIS JOHNSON, Plaintiff in Error.

*Opinion filed December 15, 1908.*

1. DEDICATION—*offer to dedicate is withdrawn by death of proposed donor.* An offer to dedicate land for a public street is revoked, by implication, by the death of the proposed donor before acceptance of the offer by the public authorities, and subsequent acts of the public authorities indicating an acceptance of the offer do not operate to complete the dedication.

2. SAME—*proof of acceptance must be clear and satisfactory.* Dedication of a street is not complete until acceptance, which may be express, as shown by some order, resolution or other record of the action of the public authorities, or be implied by acts of the public authorities recognizing the existence of the street and treating it as a public way, but the proof of acceptance must be unequivocal, clear and satisfactory.

3. EVIDENCE—*what is inadmissible in a street obstruction case.* In a prosecution for obstructing an alleged public street by fences, evidence that the defendant, before building the fences, went to the streets and alleys committee of the village and requested permission to build a lane across the strip of ground, calling it a street, which request was denied, is not admissible, as no estoppel can rest on what the defendant said, the request being denied.

WRIT OF ERROR to the Circuit Court of Christian county; the Hon. A. M. ROSE, Judge, presiding.

PROVINE & PROVINE, and F. P. DRENNAN, for plaintiff in error.

R. C. NEFF, State's Attorney, (J. C. & W. B. MCBRIDE, and HOGAN & WALLACE, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

An indictment was returned by the grand jury to the circuit court of Christian county charging Louis Johnson, plaintiff in error, with obstructing a public street of the village of Morrisonville, in said county, by building a fence

across the same. He entered a plea of not guilty, and there was a trial resulting in a verdict finding that he was guilty of the offense charged. The court overruled his motion for a new trial and sentenced him to pay a fine of $10 and the costs of prosecution. The record was certified to the Appellate Court for the Third District in return to a writ of error, and that court decided that a freehold was involved and the court was without jurisdiction, and therefore transferred the cause to this court.

The controverted question of fact was whether there was a public street sixty feet wide along the north side of block 2 of the defendant's addition to Morrisonville. In 1887 the defendant laid out and platted his addition to Morrisonville, consisting of two blocks, numbered 1 and 2. Block 2 was east of block 1, with a street running north and south between them, and adjoining the addition on the north was a farm owned by J. L. D. Morrison. No street was ever laid out or platted north of defendant's addition, but at the trial the strip of ground was claimed to be a street either by dedication or prescription. When the addition was laid out the defendant built a fence on the north line of block 2, and Morrison owned and farmed the land up to that fence. It was conceded that there was a street north of block 1, but the dispute was whether there was a street north of block 2, where the fence was built. The Morrison farm north of the addition was open, and there was some travel over the ground now in dispute by Morrison's tenants and others, and there was a wagon track among the cockle-burs and weeds. On May 4, 1888, the year after the addition was laid out, Morrison conveyed to Louis Banschbach a tract of land containing 78.51 acres lying north and east of defendant's addition, but leaving a strip sixty feet wide between the tract sold and the addition. Banschbach was a witness and gave his recollection of what Morrison said at that time, stating it differently in some respects, but the substance of it was that he told Mor-

rison he would give him his price for the land if he would. allow him a street there; that Morrison said, "I won't donate no street to you; if I will donate that street I will donate it to the village of Morrisonville;" that Morrison told the surveyor, "You go ahead and survey it and leave sixty feet for the street;" that Morrison said he would not let Banschbach have the sixty-foot strip, and if he donated it he would donate it to the village of Morrisonville, and that he told the surveyor to allow sixty feet for a street, and if he donated it to anybody he would donate it to the village of Morrisonville. There was another witness who testified that about the same time Morrison said he would leave sixty feet there for a street. No doubt Morrison then entertained an intention to dedicate the strip not conveyed to Banschbach, for a street, but he died about August 14, 1888, and the land was then in crops. The strip was not fenced out and no act had been done toward carrying out his intention. In 1889 Banschbach took possession of the land which he had bought and fenced it so that a lane sixty feet wide was left open, and the title of the land was then in Morrison's heirs. Banschbach was uncertain whether he built the fence in 1889 or 1890, but he thought it was not as late as 1893. There was evidence for the defendant that Banschbach farmed the land up to the defendant's line until 1893, when he built a house and set some trees along his line and built the fence. When Morrison died there had been no acceptance by the village of the proposed dedication. A witness testified that at some time, which he was unable to fix, he did some work on the strip under a street commissioner, and that three or four furrows were plowed on each side of the strip and it was graded up. He named two persons as street commissioners under whose direction he said the work was done, but they both testified they never gave him any instructions to work north of defendant's addition, and that they never did or ordered any grading on that part of the street. One of these persons said

that he was street commissioner about 1888; 'that no work was done at that place and he did not know there was any street there. The other one said that he was street commissioner from 1893 to 1898 and never did any grading on the disputed ground or saw any grading done there, and never gave the witness who testified that grading was done, any orders to do grading at that place. There was no evidence whatever from which the jury could find that there was any acceptance by public authorities in the lifetime of Morrison, the owner of the land, of an offer to dedicate the strip for a street. In 1896 the defendant bought from Banschbach a tract of eight acres north of block 2 and built two fences at the north-west corner of that block across the strip in question connecting his land in the addition with the eight-acre tract. The fences remained across the strip about eleven years, until the village authorities removed them, in May, 1897, and defendant re-built them. Banschbach fenced up the east end of the strip about 1900 or 1901 and used it for a hog-pen for about six years, and only removed his fence in the spring of 1907. From the time Banschbach built his fence on the south line of his land, whenever it was, until the defendant bought the tract of eight acres from Banschbach and built the lane across the strip, there was some travel by the public over the disputed ground, but since 1896 there has been no public use of the strip of ground, on account of the defendant's fences being there all the time and Banschbach's hog-pen the greater part of the time.

The court overruled the objection of the defendant to testimony that he came to the committee on streets and alleys of the village in 1898 and asked leave to put a lane across the strip of ground so that his stock could go and come and get water without carrying water across, calling it a street, and that the committee told him they could not give him permission to blockade a street and denied his application. The evidence was not competent to prove the ex-

istence of the highway by dedication, prescription or in any other manner. The village did not grant, but refused, the privilege asked for, and what the defendant said could not operate as an estoppel. The natural effect of the testimony was to lead the jury to believe that the defendant was guilty because he had recognized the strip of land as a street.

Instruction No. 11 given at the request of the prosecution was erroneous in telling the jury that it was sufficient to constitute a dedication if Morrison intended to give, and did offer to give, the land for a street, and the village by its acts and uses accepted it and appropriated it as a street. The instruction set no limit of time to the acceptance, but authorized the jury to find that the strip was a street if accepted at any time, whether in the lifetime of Morrison or afterwards.

Instructions 13 and 14 were abstract in form and related to streets by user or prescription. They had no application to the case for want of any evidence on which to base them, and the fourteenth was entirely unintelligible.

There was no user which could establish a street by prescription, and a dedication is only complete upon an acceptance, which may be manifested in various ways. An express acceptance may be shown by some order, resolution or action of the public authorities made and entered of record, or it may be implied by acts of the public authorities recognizing the existence of the street and treating it as a public way, but the proof of acceptance must be unequivocal, clear and satisfactory. (*City of Chicago* v. *Drexel,* 141 Ill. 89; *City of Carlinville* v. *Castle,* 177 id. 105.) The acceptance may follow the offer to dedicate at once, but it is not necessary that the public authorities should accept the offer immediately. The acceptance may be within such reasonable time as the public necessity may allow and require. (*Town of Lake View* v. *LeBahn,* 120 Ill. 92.) The acceptance, however, must be within a reasonable time and before a withdrawal of the offer. (Elliott on Roads and

Streets; sec. 155.)   The dedication is not complete until an acceptance, and as there must be two parties to a dedication, the offer to dedicate was revoked, by implication, by the death of Morrison.   (13 Cyc. 490.)

The court erred in refusing defendant's motion for a new trial on the ground that the verdict was against the evidence.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*