WILLIAMS REALTY COMPANY, INC. *v.* HOWARD R. ROBEY ET AL.

[No. 73, October Term, 1938.]

*Decided December 1st, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Frederick C. Smith, Jr., James G. Woodward,* and *James Doyle, 3rd,* submitting on brief, for appellant.

*Marvin I. Anderson,* for appellees.

BOND, C. J., delivered the opinion of the Court.

Robey and wife, owners of a lot of ground in a residential development on an estuary of the Bay, named Selby-on-the-Bay, have complained that a space fronting on the water, set apart at the time of purchase and represented to be for an exclusive community use, has been divided into lots for sale, and meanwhile rented out for a public resort; and they have secured an injunction against the new use. The owner of the area, the developer of the tract, has appealed.

There is a motion to dismiss the appeal because of delay in transmission of the record beyond the limit of three months from its entry. Code, art. 5, sec. 6. But an affidavit of the clerk of the court from which the appeal has come shows an excuse within article 5, section 44, on the ground of delay by him. Directions for preparation of the record were given the clerk in sufficient time, but, in accordance with a local custom, preparation was deferred until the cost of the transcript was paid, and waiting for payment delayed transmission beyond the limit. Preparation of a transcript cannot properly be withheld waiting for payment. *Walter v. Second National Bank,* 56 Md. 138; *Miller v. Mencken,* 124 Md. 673, 677, 93 A. 219. The motion must be overruled.

Otis L. Williams, Jr., and Alvin G. Branham, as part-

ners, bought the whole tract of land, of about 206 acres, in 1930, upon a purchase money mortgage, and had it surveyed and platted in house lots and started selling at once. The plat upon which the earliest sales were made showed a section contiguous to the water, free of any plan for house lots, and marked in large type, "Community Beach and Park." The complainants testified that in 1930, after having considered purchase of a lot back from the water, they chose, upon a view of that plat, and agreed to purchase, a lot fronting on the "Community Beach and Park," and separated from it by a thirty foot road. They produced from their own possession a copy of the plat then given them by the sales agent. In their deed, delivered some months later, in March, 1931, the lot was described as "beginning at the intersection of the west side of a thirty foot road now called First Avenue lying between the property hereby conveyed and Community Beach." The granting clause contained no reference to a beach.

The advantages of what amounted to a water front for their lot, they said, were urged upon them by a salesman and by Branham, and they were given explicit verbal assurances that the "Community Beach and Park" would be kept open as a provision for the lot owners of the community, as its name signified, and would eventually be given over into the ownership or control of lot owners. It was stated by the promoters and their agents that a swampy part of the open area would be cleared to make a shallow pool for children, and the whole was to have the attractions of privacy for lot owners and their friends. These assurances, the complainants testified, induced them to buy as they did. And purchasers of a number of other lots testified that they, too, purchased on like assurances, repeatedly given prior to the year 1935. Testimony on behalf of the defendant, the appellant, and successor in title to that of the partners, was to the effect that the designation of the open space as a "Community Beach and Park," on the first plat, was a mistake of the surveyor, that a beach free to lot owners

was intended, but the size and exact location were not determined upon, and the designation was therefore merely tentative. Exclusion of the public, it was testified, was never intended, but on the contrary possible purchasers were necessarily invited to use the beach.

About a month after the issue of the first plat, another was prepared and issued with the same open, unplatted, space shown, but no words designating its use. The first plat had not been recorded; this second plat was recorded in August, 1930. There is testimony, however, of continued selling upon a showing of the first plat, and assurances of a private, community, beach. As late as 1934 deeds for lots sold described the lots with reference to the thirty foot road lying between particular blocks of lots "and Community Beach." A third plat, showing for the first time a division of the open area into lots, although marked as made in 1932, was recorded in 1937, when to obtain a refinancing mortgage for the development enterprise it was found necessary to include a greater area in the security. By that time the swampy portion of the area had been conditioned by pumping sand to fill it.

On October 2nd, 1935, Williams, having purchased Branham's interest, had all the unsold portions of the tract conveyed to a corporation, the present defendant and appellant, in which Williams owns eight shares of a total of ten. A former salesman and a secretary own the other shares. It is not contended that the corporation was without knowledge of all that had been done by the partners.

The court finds a preponderance of testimony to prove that the complainants were induced to buy their lot upon assurances in the first plat, and verbally, confirmed by the reference in their deed to the "Community Beach," lying immediately across the road in front of their lot, that they were securing rights to the enjoyment of the open space from the road to the water, in conjunction with other lot owners and such persons as they might invite. We do not understand that objection is made to

use by visiting buyers of lots originally laid out, pending the sale of all of them. The designation of "Community Beach and Park" contained in itself an assurance of restriction to the private and exclusive use contended for, and use of more than the beach on the edge of the water was indicated by that description. As seen, in fact, the descriptions in deeds measured the community beach and park from the thirty foot road to the water. There was, too, an issue of admission tickets to lot owners which would indicate a restriction in their favor.

But it is agreed that, since the summer of 1935, the open space in controversy has been rented out as a public shore resort and night club, and patrons have been solicited by advertisements in Washington. There is a club house on the site, and beer has been sold to patrons, on week ends the place is overcrowded with parked cars, and the beach is too small to accommodate the crowds that come on Sundays, chiefly from Washington—clearly a diversion from the use contemplated in the purchase of the complainants' abutting lot. The principal question is that of the law. Have they a right to enjoin such a departure from the conditions of their purchase?

In opinions in some earlier cases before this court, it has been remarked that a difference of opinion existed elsewhere on the propriety of extending to land of a grantor, beyond streets or roads which delimit lots granted, any implication of rights such as attach to those streets or roads when called for in plats and deeds. In this court the question has not been fully settled. A closely similar case was presented in *Howard v. Rogers,* 4 H. & J. 278. Howard had planned to open a public square in Baltimore City, and plats and maps issued by him and by the city authorities showed the space so opened. Rogers, in buying a lot fronting on one of the adjacent streets, required that a reference to the square should be inserted in his conveyance, and the description accordingly recited that his front street "bounds on the south the square intended for public uses." But the Court of Appeals held that, the deed being free from latent

ambiguity, the question of intention with respect to the square was to be answered strictly by inspection of the terms of the deed, unaided by testimony of surrounding circumstances; and as the granting clause of the deed did not include a grant of right in the square, none passed. The effect of that decision was limited in an opinion by Chief Judge LeGrand in *White v. Flannigain,* 1 Md. 525, 542. It was observed that the plan for the square had been conditional only. "The object of Col. Howard, was to lay off a public square for the use of the State, in the event of the removal of the seat of government from Annapolis to Baltimore." And to ascertain the intention with regard to an equitable easement in *White v. Flannigain, supra,* a map by the city or by the owner extrinsic to the deed of conveyance, was held a proper aid. *Harbor Co. v. Smith,* 85 Md. 537, 37 A. 27, was a suit by a lot owner to enjoin inconsistent use of land laid out on a recorded plat as a square. But it had been so laid out only after an agreement duly recorded had granted unrestricted rights in that part of the area, so that any claim of dedication to the lot owners was subordinate to the agreement, and the maker of the plat could not alone be found so to have dedicated it. The court added (page 542, 37 A. page 28), "It is claimed by the plaintiffs that the alleged dedication was effected by the laying of the square on the map, by the sale of lots in accordance with and with reference to said map and by representations made by the agents of the Patapsco Company that the streets and square as they appeared on the map should be enjoyed by the purchasers of lots. Now, it may be conceded that, if there were any owners of lots who purchased under such circumstances, and without notice of the contents of the agreement * * * they would have a standing in a court of equity." Again, in *Canton Co. v. Baltimore,* 106 Md. 69, 66 A. 679, 67 A, 274, a similar question of rights in a platted square arose, and the court remarked the fact that while most text books and cases asserted that rights in bordering streets and in nearby parks were subject to the same rules, there was

a difference of view on this. And an argument to the contrary was quoted. In the particular case there was no evidence that the plats in question, showing the square, were ever in the possession of the owner and developer, and no sufficient showing of an intention to dedicate the square to lot owners or the public; and, besides, there had been an adverse user for a period beyond twenty years. *Stover v. Steffey,* 115 Md. 524, 81 A. 33, was another, somewhat similar, case. A park shown on an unrecorded plat was at a distance from the lot to the ownership of which the right was sought to be attached, and the intention to include the right in the grant was not found.

It is a question of intention, and a clear manifestation of it must appear. *North Beach v. Land & Imp. Co.,* 172 Md. 101, 115, 191 A. 71. It is not always, as is suggested by some questions asked witnesses here, the purpose actually in the grantor's mind that must be carried out. From expressions used, inducements extended, the law determines rights and obligations, and not from subsequently disclosed mental operations to the contrary. *Pomeroy, Equity Jurisprudence,* secs. 811 and 1294. This manifestation of intention need not be found in the conveyance; a sufficiently clear manifestation in a previous agreement must have the same result. *Newbold v. Peabody Heights Co.,* 70 Md. 493, 499, 17 A. 372; *Peabody Heights Co. v. Willson,* 82 Md. 186, 32 A. 386, 1077; *Pomeroy Equity Jurisprudence,* secs. 1294 and 1295.

The relation of lots in a water front settlement to the water differs from that of abutting lots to a city square. There is naturally a greater dependence, if, indeed, we should not say that access to the water is an essential, for in that access lies the purpose of the settlement and the purchase of lots in it. As Williams, testifying for the defendant, agreed, facilities for access to the water constituted the chief selling point. Therefore the case is concerned with a possible estoppel or implied covenant with relation to an incident almost, if not altogether, of importance equal to that of a bordering street. And

540

when a buyer is persuaded, as in this case, by the assurances of restricted facilities in a community beach lying immediately across his front road or street, the advantages appear with sufficient clearness and certainty to have been sold to him as an incident, and in a court of equity repudiation must be prevented by injunction. As stated, this conclusion is in accord with the greater number of text writers and courts elsewhere, as well as with decisions of this court. *McCleary v. Lourie,* 80 N. H. 389, 117 A. 730; *Lennig v. Ocean City Assn.,* 41 N. J. Eq. 606, 7 A. 491; *Erit Realty Corp. v. Sea Gate Assn.,* 259 N. Y. 466, 182 N. E. 85; *King v. Land Co.,* 143 Md. 693, 123 A. 455; *Gosnell v. Roberts,* 147 Md. 625, 627, 128 A. 276; *Tiffany, Real Property,* sec. 366 (c).

*Motion to dismiss the appeal overruled, and decree affirmed with costs.*