### GIVENS v. COMMONWEALTH ex rel.

Court of Appeals of Kentucky.
Dec. 21, 1951.

Stoll, Keenon & Park and Robert F. Houlihan, Lexington, William A. Hamm, London, for appellant.

A. E. Funk, Atty. Gen., Squire N. Williams, Jr., Asst. Atty. Gen., for appellee.

MILLIKEN, Justice.

The State claims title by way of dedication to two tracts of land adjacent to the Levi Jackson Wilderness Road State Park in Laurel County which the appellant, Marian Jackson Givens, asserts she inherited as sole heir of her father, G. D. Jackson, who died intestate in 1937. The State asserts that in 1931 G. D. Jackson offered to dedicate his interest in the land for park purposes, that his offer was accepted, and that the State, consequently, has title to the land.

The two tracts of land involved were once the property of Levi Jackson who died testate in 1879. After Levi's death G. D. Jackson acquired the interest of all claimants to the two tracts except that of his sister, Ella Jackson, who retained her one-third interest in the 210-acre tract and her one-seventh interest in the 480-acre tract. On November 30, 1931, G. D. Jackson telegraphed Lee B. McHargue, then an official of the State Park Commission: "I am willing as I originally offered to deed to the State my entire interest in the whole property provided Ella will deed hers we to have during our lifetime the full and free use and benefit of the land, timber and house as at present stop to deed only a portion of the property defeats my purpose and earnest wish which is to preserve the whole intact for all times as a memorial to the Jackson and Freeman family however if she absolutely refuses I am then willing to deed to the state my interest in the following tract provided she deeds her interest namely all the land north of a line starting at Jarve Moore's southwest corner running to our west line crossing State Road at the north end of cleared land on west side of road at Lock place or any line approximately this one to which Ella agrees improvements on Lock place subject to removal by Ella the same reservation to apply to this tract as to the whole you gentlemen will have to arrange with her for the Edwards place if Ella agrees to either of these propositions and you so wire me giving metes and bounds I will execute and forward deed immediately."

On December 2, 1931, Mr. McHargue telegraphed Mr. Jackson that: "Miss Ella will join you in a deed for all jointly owned land north of a straight line from Jarve Moore's southwest corner to stone in Jackson's west line at northeast corner of catching field at Glade Branch. No reservations to be retained in deed. Wire us your approval and forward deed to us at once so we can get matter closed."

Thereafter, on December 5, 1931, in response to the telegram of December 2, 1931, G. D. Jackson and Ella Jackson conveyed to the State Park Commission the

land referred to in the McHargue telegram, subject, however, to this reservation: "That G. D. and Ella Jackson jointly or individually, during their lifetime or after the death of one of them, the survivor, are to have the free use and benefit of the cleared land and improvements thereon, also the use and benefit of the timber and mineral rights, but not in a way to hinder or impede the development of the park."

G. D. Jackson died in 1937 without conveying any other interest in the land in controversy. On September 27, 1938, Ella Jackson conveyed to the State Park Commission the remainder of her interest in the land in controversy, but reserved a life estate for herself. She died in 1944.

We have concluded that the quoted telegram from G. D. Jackson, dated November 30, 1931, did not constitute an unqualified offer to dedicate the land in question for park purposes. His sister, Ella, accepted his alternate proposal—to deed that part of the land "north of a line starting at Jarve Moore's southwest corner * * *," and the conveyance of December 5, 1931, by G. D. Jackson and Ella Jackson was the result. When Ella conveyed the balance of her interest in the land in September, 1938, the estate of G. D. Jackson, deceased, was not obligated thereby to relinquish its interest in the land in conformity with Mr. Jackson's telegram of November 30, 1931. An unaccepted offer to dedicate land to a public use is revoked by the death of the offeror. 26 C.J. S., Dedication, § 60, page 149; People v. Johnson, 237 Ill. 237, 86 N.E. 676; Nichols Copper Co. v. Connolly, 208 App.Div. 667, 203 N.Y.S. 839, affirmed in 240 N.Y. 596, 148 N.E. 720. There is no evidence that the Commonwealth exercised any direct or implied control over the disputed land before the death of G. D. Jackson in 1937. Graves County ex rel. Robbins v. City of Mayfield, 305 Ky. 374, 204 S.W.2d 369; KRS 148.010. And Ella Jackson, as a cotenant or tenant in common with her brother, G. D. Jackson, had no power as such a tenant to bind her cotenant to any dedication which she may have intended. As a rule no one except the owner of an unlimited estate or an estate in fee simple or some one authorized by him, can make a dedication of land. 26 C.J.S., Dedication, § 7; Chenowth Bros. v. Magnolia Petroleum Co., Tex.Civ.App., 129 S.W.2d 446; South Baltimore Harbor & Improvement Co. of Anne Arundel County v. Smith, 85 Md. 537, 37 A. 27; City of St. Louis v. Laclede Gas-Light Co., 96 Mo. 197, 9 S.W. 581. That deed merely made the State and the appellant tenants in common of the two tracts.

The land was dropped from the tax lists some time between 1940 and 1944. The clerk said that it was dropped because he had been informed that it was a part of the park. On February 20, 1940, the appellant wrote the sheriff inquiring as to the amount of taxes due and owing on the land. After a prolonged correspondence, the appellant succeeded in getting the property relisted for taxation and has continued to pay the taxes thereon since then. Also, a fire insurance policy was taken out on the buildings by the Commonwealth and the Commonwealth and the appellant were named as the insured. The appellant paid $33.60 as her part of the premium for the policy, collected some rentals from the property and remitted one-seventh of the amount to the Commissioner of Parks.

The Commonwealth and the appellant admit that the land is capable of being divided without impairing its value. The Commonwealth has received rentals from the property and also a sum of money from the insurance company for a building that was destroyed by fire. The chancellor should appoint commissioners for the purpose of dividing the land according to the respective interests of the parties and also to divide it in such a manner that the Commonwealth's division is adjacent to Levi Jackson Park. Furthermore, the commissioners should determine the amount of rentals collected and apportion them and insurance money between the appellant and the Commonwealth according to their respective interests.

The judgment is reversed for proceedings in compliance herewith.