Clyde E. BOURKE, Trustee in Bankruptcy, Appellant and Cross-Appellee,

v.

Benjamin KRICK, Claimant, Appellee and Cross-Appellant.

In the Matter of ROGER CRAIG, INC., Bankrupt.

No. 8560.

United States Court of Appeals Fourth Circuit.

Argued April 3, 1962.

Decided June 5, 1962.

Rehearing Denied Aug. 20, 1962.

J. Martin McDonough and William Holland Wilmer, II, Baltimore, Md. (Howard Larcombe, Silver Spring, Md., and Piper & Marbury, Baltimore, Md., on the brief), for appellant and cross-appellee.

Leonard S. Melrod (Joseph V. Gartlan, Jr., Washington, D. C., Robert L. Weinberg and J. Edward Davis, Baltimore, Md., on the brief), for appellee and cross-appellant.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

SOBELOFF, Chief Judge.

This appeal concerns a controversy between Clyde Bourke, trustee in bankruptcy of Roger Craig, Inc., and Benjamin Krick over the proceeds from the sale

of certain real property located in Montgomery County, Maryland. Determination of the issue is wholly dependent on Maryland law.

Roger Craig, Inc., the bankrupt, is a solely owned corporation of Daniel M. Ostrow, which engaged in the development of real estate in Maryland. Fee simple title to the land underlying this litigation was acquired by Ostrow, individually, in 1955. On June 28, 1957, he and his wife contracted to sell the property to the Bethel Baptist Church for $48,213.00. The contract was recorded shortly thereafter. Subsequently, marital difficulties having arisen between Ostrow and his wife, Roger Craig, Inc., was organized, and on August 1, 1958, they conveyed a large tract of land to the corporation. The purpose of the conveyance was to enable Ostrow to deal with the property without the necessity of procuring his wife's separate signatures on deeds, contracts and the like. Included in the conveyance to the now bankrupt corporation was the property under contract of sale to the church, and this transfer is the source of the trustee's claim. On August 11, 1958, this deed was properly recorded in the land records of Montgomery County.

Later, on July 17, 1959, Ostrow (joined by his wife) assigned, in his individual capacity, all right, title and interest in and to the proceeds of the contract with the church to Benjamin Krick. This is the instrument upon which Krick rests his claim. Both parties to the assignment assert that they were unaware that the church property had been included in the previous conveyance to Roger Craig, Inc. At the time of the assignment Ostrow was in debt to Krick for plumbing and heating supplies, and Krick credited Ostrow's account with an amount equal to the purchase price due from the church under the recorded contract of sale. By letter dated February 16, 1960, Krick notified the church of the assignment. It is undisputed that Roger Craig, Inc., never notified the church of the deed to it.

Two months later, bankruptcy proceedings were begun against Roger Craig, Inc. Meanwhile, the church discovered among the land records the 1958 deed from Ostrow to Roger Craig, Inc., and when the church made settlement for the property, deeds were executed by both Ostrow (in which his wife joined) and Roger Craig, Inc., and by agreement of the parties the church paid the proceeds to attorneys to hold in escrow for the future determination of the rightful claimant. By turnover petition, the jurisdiction of the District Court was invoked to determine the rights of the respective parties in the fund. As above noted, the trustee relied upon the 1958 deed from Ostrow to the bankrupt, while Krick asserted his later assignment.

In the District Court, the parties assumed that the interest retained by Ostrow in the land he contracted to sell to the church was merely a chose in action. Predicated upon this assumption, the parties viewed the controversy between the trustee and Krick as governed by the Maryland law of assignments. On the one hand, the trustee contended that Article 8, section 1 of the Annotated Code of Maryland (1957),[1] enacted in 1943, established in Maryland the rule that, as between assignees of the same interest, the first in time prevails. On the other hand, Krick, relying on the case of Maryland Cooperative Milk Producers, Inc. v. Bell, 206 Md. 168, 110 A.2d 661, 665·

1. "§ 1. Effect of written assignments.

"All written assignments, and all written assignments in the nature of a pledge, of accounts receivable and amounts due or to become due on open accounts or contracts, except in cases where notice to the debtor of such assignment is specifically required by any policy of insurance or a statute then in effect, shall be valid and legal and shall pass the title of such accounts receivable and amounts due or to become due on open accounts or contracts to the assignee thereof, and shall take effect according to the terms of the assignment, without the necessity of notice to the debtor, and the transfer of the title shall take effect and be valid and enforcible against all persons as of the date thereof; * * *."

(1955),[2] insisted that the 1943 statute did not change the prior law, which was that, as between assignees, the first to notify the debtor of the assignment prevails.[3] Alternatively, Krick argued that, even if the statute did change the prior law, it was intended to apply to accounts receivable financing and not to transactions like that between Ostrow and Roger Craig, Inc. The District Court ruled in favor of Krick upon the above issues as framed by counsel.

On this appeal, the parties again assumed that the Maryland law of assignments was controlling, but at oral argument the court asked for additional briefs dealing with the possible application of the Maryland recording statutes. These were filed, and after thorough consideration of the Maryland law we have concluded that the recording statutes are determinative of the issues before us. We therefore do not pass on the grounds upon which the decision turned in the District Court.

■■ Article 21, section 1 of the Annotated Code of Maryland (1957), provides that "No estate of inheritance or freehold, or any declaration or limitation of use, or any estate above seven years, shall pass or take effect unless the deed conveying the same shall be executed, acknowledged and recorded as herein provided; * * *." Recording of an instrument under this section gives constructive notice of the transfer. See Ivrey v. Karr, 182 Md. 463, 34 A.2d 847,

852 (1943); Anno.Code of Maryland Art. 21, § 13 (1957). Similarly, "Every bond, writing obligatory or contract for the conveyance of real estate, or any interest or estate of, in, or relating to real estate, * * * may be executed, acknowledged and recorded in the same manner as deeds of real estate * * *." Anno.Code of Maryland Art. 21 § 26 (1957). And such recordation gives constructive notice thereof. See Lowes v. Carter, 124 Md. 678, 93 A. 216, 218 (1915). The design of these statutes, as stated by the Court of Appeals of Maryland, is that "all rights, incumbrances, or conveyances touching or in any wise concerning land should appear on the public records." South Baltimore Harbor & Improvement Co. v. Smith, 85 Md. 537, 37 A. 27, 29 (1897).

Consistent with this broad purpose, the Maryland court has approved the recordation of easements,[4] deeds of real property for the benefit of creditors,[5] deeds of trust,[6] leases,[7] contracts of conveyance,[8] restrictive covenants contained in deeds,[9] drainage easements,[10] option contracts pertaining to real property,[11] as well as deeds of real property.[12] In each instance, subsequent purchasers and creditors were held to have constructive notice of the recorded transaction.

■ In the present case, Ostrow conveyed to Roger Craig, Inc., a deed to real property. Concededly, the corporation was not in law a bona fide purchaser with-

---

2. But see, Automobile Acceptance Corp. v. Universal C. I. T. Credit Corp., 216 Md. 344, 139 A.2d 683, 686 (1958).

3. For an excellent discussion of the Maryland law of assignments prior to the 1943 statute, see Page, Latent Equities in Maryland, 1 Md.L.Rev. 1 (1936).

4. See Dawson v. Western Md. R. Co., 107 Md. 70, 68 A. 301, 304, 14 L.R.A.,N.S., 809 (1907).

5. See Cohen v. Barton, 73 Md. 408, 21 A. 63 (1891).

6. See Kinsey v. Drury, 146 Md. 227, 126 A. 125 (1924).

7. See Nickel v. Brown, 75 Md. 172, 23 A. 736 (1892).

8. See South Baltimore Harbor & Improvement Co. v. Smith, 85 Md. 537, 37 A. 27 (1897).

9. See Lowes v. Carter, 124 Md. 678, 93 A. 216 (1915).

10. See Nohowel v. Hall, 218 Md. 160, 146 A.2d 187 (1958).

11. See Clarke v. Brunk, 189 Md. 353, 55 A. 2d 919 (1947).

12. Mortgages are covered in Anno.Code of Maryland Art. 21, § 29 (1957). See General Ins. Co. v. United States Ins. Co., 10 Md. 517 (1857) (mortgage of an equitable interest in real property required to be recorded).

out notice, first because it gave no consideration and second because it had actual and constructive notice of the outstanding contract of sale to the church. Hence it took subject to the church's prior equity. However, this feature did not disqualify the deed from recordation. It was a conveyance of land, and, indeed, had Roger Craig, Inc., been a bona fide purchaser without notice actual or constructive of the contract of sale, it would have taken full right, title and interest to the property free of the church's equity.[13] Consequently, the recorded deed to the corporation put Krick on constructive notice that Ostrow had divested himself of the property. Ostrow's later assignment to Krick cannot prevail against the trustee.

■ The suggestion that the interest retained by Ostrow in the property he contracted to sell to the church was mere personality is unacceptable. We are aware of the Maryland cases holding that, where a testator dies owning real property which he had contracted to sell, the proceeds of the sale will, under the doctrine of equitable conversion, be treated as personalty and distributed accordingly by the personal representative of the testator.[14] But nothing in these cases indicates that the deed given by the vendor's personal representative to the vendee is not entitled to recordation.[15] To the contrary, the Maryland law is that legal title to land does not pass until a deed is properly executed and recorded,[16] and, as pointed out above, until this is done a vendee's equity in property is subject to destruction by a conveyance of the legal title to a bona fide purchaser without notice.[17] This seems to us to

refute the suggestion that the interest retained by a vendor under a contract for the sale of real property is mere personalty.

■ Lambert v. Morgan, 110 Md. 1, 72 A. 407 (1909), does not require a contrary result. There a testator devised to Mrs. Williams a life estate in the income from certain real property. Also, a named trustee was directed under the will to sell, at his discretion, all of the testator's property, real and personal. Mrs. Williams purported to mortgage her life interest, and the mortgage was recorded. The court held that the mortgage was not entitled to be recorded, and that its recordation did not give constructive notice to subsequent assignees of Mrs. Williams' interest. This conclusion was reached because the testator's direction that all his property be sold converted his real property into personalty at the time of his death, by force of the doctrine of equitable conversion, even though it might not be sold until later. It followed that Mrs. Williams had only a life estate in personalty, not an equitable interest in land. While some broad language in this decision cannot be reconciled, we think the proposition that the doctrine of equitable conversion completely transmutes land into personalty has not been given application outside the law of descent and distribution. Cf. Harrison v. Prentice, 183 Md. 474, 38 A.2d 101, 104–105 (1944). Except in this area of the law, the Maryland court has consistently recognized that a vendor who has made a contract to sell land retains more than a mere personalty interest therein. See, e. g., the cases cited in note 13, supra. See also, Hooper v. Lo-

---

13. See 55 Am.Jur., Vendor and Purchaser, § 408 (1946); 5 Tiffany, Real Property, § 1258 (3d ed. 1939); Westpark, Inc. v. Seaton Land Co., 225 Md. 433, 171 A.2d 736, 743 (1961); cf. Forsyth v. Brillhart, 216 Md. 437, 140 A.2d 904 (1958).

14. See Birckner v. Tilch, 179 Md. 314, 18 A.2d 222 (1941); Lambert v. Morgan, 110 Md. 1, 72 A. 407 (1909); Cronise v. Hardt, 47 Md. 433 (1878); Pettit, Conversion Under Contract For Sale, 24

Conveyancer 47 (1960); Restatement (Second), Conflict of Laws, § 209 (Tent. Draft No. 5, 1959).

15. Anno.Code of Maryland Art. 93, § 86 (1957), authorizes an executor or administrator to execute deeds in compliance with outstanding contracts of sale.

16. See Nickel v. Brown, 75 Md. 172, 23 A. 736 (1892).

17. See note 13, supra.

gan, 23 Md. 201 (1865); Kinsey v. Drury, 146 Md. 227, 126 A. 125, 127 (1924). In these cases, the court expressly recognized that the vendor retains an interest in the land.

Maryland decisions giving a preference to a vendee under a contract of sale over subsequent attaching creditors of the vendor do not conflict with the view we take. Such cases rest on equitable principles not here relevant, for no one here is contesting the church's right to the land upon payment of the purchase price.[18] Nothing in these cases suggests that the interest of the vendor is a mere chose and not an interest in land or that its conveyance is not subject to recordation.

■ Our conclusion that the deed from Ostrow to the bankrupt was recordable may be fortified by a theoretical argument grounded on facts not here present, but which illustrates the lack of merit in the contention that, upon the execution of the contract of sale to the church, Ostrow's interest became mere personalty. It has been authoritatively held that in Maryland contracts for the sale of land, although recordable, are valid even if not recorded.[19] Assume therefore that A contracts to convey land to B, and the contract is not put on record. Thereafter A, who, according to the contention addressed to us, retained an interest that was merely personal, executes a deed to B in compliance with the contract. If A's conveyance was of personalty, and therefore not entitled to recordation, what becomes of the chain of title the statutes are designed to make appear on the public records? It would be incongruous to tolerate an interpretation of the law permitting such a serious gap. To do so would subvert the very purpose of the recording statutes, which is to have all transfers of land and interests in land appear on the record without putting a title searcher to the obligation of making personal inquiries outside the record. The time honored fiction of equitable conversion has been found useful in certain situations, but it has not heretofore been supposed that it operates to unsettle the statutory scheme for tracing legal title to real estate.

This is not a case in which the title holder of real estate, which he has contracted to sell, attempts to split off the bare right to receive the proceeds of the sale by assignment to one person, while the bare legal title is retained or transferred to another. We are not called upon to decide whether such an assignment would be recordable. Ostrow undertook to make no such division. He had a fee simple title that was subject only to the church's equity, and when his deed to Roger Craig, Inc., was recorded, Ostrow had nothing left upon which the subsequent assignment to Krick could operate.

The question remains, of course, whether Krick can take advantage of the fact that Ostrow may not have intended to convey the church property to Roger Craig, Inc.[20] However, since there has been no factual finding by the District Court whether the inclusion of the church property in the deed to Roger Craig, Inc., was through inadvertence, we leave this issue open for decision by the District Court on the facts and the law, and we express no opinion on it.

The case will be remanded for proceedings not inconsistent with this opinion.

Remanded.

---

18. See Kinsey v. Drury, 146 Md. 227, 126 A. 125 (1924); Cramer & Sons v. Roderick, 128 Md. 422, 98 A. 42 (1916). And see such cases as Skinner & Sons Shipbuilding & D. C. Co. v. Houghton, 92 Md. 68, 48 A. 85 (1900), holding that, where real property is damaged after it has been contracted to be conveyed, the proceeds of an insurance policy of the vendor are held in trust for the vendee.

19. See Westpark, Inc. v. Seaton Land Co., 225 Md. 433, 171 A.2d 736, 744 (1961).

20. See Anno., 79 A.L.R.2d 1180 (1961).